NUSSBAUM APC
Lane M. Nussbaum, SBN 264200
Wayne M. Abb, SBN 91625
Richard J. Uss SBN 273871
27489 Agoura Road, Ste. 102
Agoura Hills, California 91301
Tel. (818) 660-1919 | Fax. (818) 864-3241

Attorneys for Plaintiff Rob Kolson Creative Productions, Inc.

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO DIVISION

| | |
|---|---|
| In re:<br><br>MARSHALL SCOTT STANDER,<br><br><br>Debtor.<br>_____<br><br>ROB KOLSON CREATIVE<br>PRODUCTIONS, INC.,<br><br>Plaintiff<br><br>vs.<br><br>MARSHALL SCOTT STANDER,<br><br>Defendant. | Case No.          1:19-bk-13099-GM<br>Adversarial Case No.: 1:20-ap-01025-GM<br><br>**ROB KOLSON CREATIVE<br>PRODUCTIONS, INC.'S OPPOSITION<br>TO DEFENDANT'S MOTION TO<br>DISMISS**<br><br><br>Date:          April 20, 2021<br>Time:          10:00 a.m.<br>Courtroom:  302 |

///

///

///

-1-

**TO THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE, ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

Plaintiff Rob Kolson Creative Productions, Inc. ("Plaintiff") hereby submits this Opposition to Defendant Marshall Scott Stander's ("Defendant") Motion to Dismiss for Lack of Prosecution (the "Motion") on the following grounds:

## I.  **INTRODUCTION**

By bringing this instant action, Plaintiff intends to prove that, despite Defendant representation that Defendant has earned between $0.00 at its lowest and approximately $14,000.00 at its highest, in income through the California corporation that Defendant has sole control over, Defendant, on a yearly basis has caused that same corporation to, *inter alia*:

(1)    Pay hundreds of thousands of dollars to Defendant's former spouse, with whom Defendant currently remains cohabitated with, including her mortgage, automobile and credit card payments; and

(2)    Pay significant amounts to out-of-state family members, but have the drafts deposited into accounts held by Defendant As more fully set forth below, and in the accompanying declaration, Defendant attempts to mischaracterize events and raise unsupported conjecture in support of this Motion.

In advancing these particular contentions, Plaintiff served Defendant with a document production consisting of nearly 1,500 culled pages of transfers to and from Defendant's financial institutions that evince these monetary transfers that, at a minimum, exceed the highest income year identified by Defendant in his supporting tax returns by an exponential factor that is in the double digits.  Moreover, the documents produced to Defendant, unacknowledged in Defendant's Motion, further evince that the revenue generated by Defendant's solely-held corporation has been similarly downplayed by double digit factors.

1   Plaintiff's conduct has not been frivolous, insomuch that Plaintiff's failure to appear

2   at the October 16, 2020 and March 16, 2021 hearings were each due to a reasonable

3   mistake and/or excusable neglect on the part of counsel.

4   Plaintiff was unaware that the delay in having the trial date set, as well as the related

5   pretrial cutoffs, was related to the conduction and/or completion of discovery in this matter.

6   As more fully set forth below, in the underlying District Court action to enforce the

7   judgment as against Defendant, orders finding both The Stander Group (under Defendant's

8   sole control) and Defendant's State counsel in contempt due to pervasive and intentional

9   dilatory conduct has not acted to compel either to conform to the District Court's Order.

10  See, *Rob Kolson Creative Investments, Inc. v. Stander*, case number 2:18-cv-06789-VAP-

11  GJS; See, Exhibits 2 and 3. Plaintiff is not, and has never been, adverse to having this

12  matter set for trial and, at each continued hearing, readily believed that the parties would be

13  provided with a trial date as well as associated pre-trial dates.

14  "[I]f a plaintiff can provide an excuse for its conduct that is "anything but frivolous,

15  the burden of production shifts to the defendant to show at least some actual prejudice." *In*

16  *re Eisen*, 31 F.3d at 1452, 1453 (9th Cir. 1994).

17  For the foregoing reasons, Defendant's Motion should be denied.

18  **II.   PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**

19  Plaintiff respectfully requests that this Court take judicial notice of the documents

20  attached hereto as Exhibits 2 and 3, in the underlying matter of *Rob Kolson Creative*

21  *Investments, Inc. v. Stander*, case number 2:18-cv-06789-VAP-GJS. These documents are

22  part of the public record and subject to verification. See, *Tellabs, Inc. v. Makor Issues &*

23  *Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Hernandez v. Select Portfolio Servicing*, Inc., 2015

24  WL 3914741, at *3 (C.D. Cal. June 25, 2015).

25  ///

26  ///

27  ///

28

## III.  **ARGUMENT**

### A.   **DEFENDANT ATTEMPTS TO MISCHARACTERIZE THAT WHICH HAS OCCURRED RELATED TO PLAINTIFF'S FAILURE TO APPEAR**

Despite Defendant's contention that Plaintiff's failure to appear as being dilatory, Plaintiff's failure to appear is the result of unfortunate, but excusable neglect with respect to the October 26, 2020 hearing and mistake or surprise related to the Mach 16, 2021 hearing.  Plaintiff's conduct, despite amounting to excusable neglect identified with respect to Fed. R. Civ. Proc., Rule 60, *et seq*., was not carried out in bad faith.  No tactical, strategic, or ulterior motive existed with respect to Plaintiff's oversight related to the hearings in question.

#### 1.   **Plaintiff's Failure to Appear at the October 27, 2020 Hearing was Due to Excusable Attorney Neglect.**

In advance of the October 27, 2020 hearing, due to an error in Plaintiff's office's filing system, the matter continued to be referenced under the former case number 1:20-ap-01025-MT and that the conference in the matter was to be heard in the previous Courtroom, room 302, not Courtroom 303, where the matter is currently pending.

This matter was previously pending in Courtroom 302 before the Honorable Maureen A. Tighe and the case number then had the two letter "MT" appended thereto. Despite the transfer of this matter to Courtroom 303 where it is currently pending, unfortunately and unbeknownst to Plaintiff's counsel, the matter was still erroneously identified as being in Courtroom 302 and the parties' joint status report similarly reflects the incorrect case suffix of "MT," referencing the Honorable Maureen A. Tighe [*See*, Dockt. 30] The error was not noticed and this miscalendaring was subsequently overlooked by counsel for Plaintiff in advance of the hearing on October 27, 2020.  I have since made sure that the error in our case files has since been resolved and now reflects the correct case number and Courtroom assignment.

1    Plaintiff logged in through Zoom.gov at approximately 10 minutes prior to the start

2    time of hearings to take place in Courtroom 302, as was reflected in Plaintiff's counsel's

3    calendaring system.  It was only after Courtroom 302 had completed the majority of the

4    calendar did the clerk in Courtroom 302 inquire as to Plaintiff's presence on Zoom.  It was

5    then realized that Plaintiff's counsel had logged into the incorrect Courtroom's Zoom

6    conference.  By the time Plaintiff's counsel had realized the error, this matter had already

7    been heard in Courtroom 303 before this Court and Plaintiff had failed to appear.

8    Plaintiff had no intention to not appear at the hearing in question, however due to

9    excusable neglect, appeared in the incorrect courtroom for the 10:00 a.m. calendar on that

10   date.

11            **2.    Despite Plaintiff's Efforts, Plaintiff was Unable to Access the**

12                    **March 26, 2021 Hearing**

13   On March 16, 2021, Plaintiff attempted to log in to the hearing through the Zoom

14   link identified in this Court's tentative ruling (https://cacb.zoomgov.com/j/1614537835).

15   Clicking on the link automatically opens the preinstalled Zoom application and

16   automatically populates the meeting id and password for the attendee.

17   Despite not having to physically input a password, upon Plaintiff clicking on the

18   link, an error message appeared that the password was incorrect.  Plaintiff re-attempted this

19   numerous times and then tried to manually enter the meeting id and password however a

20   "Meeting ID Is Invalid" error appeared. Plaintiff subsequently attempted to dial the

21   telephone conference line (669-254-5252) however received an automated message that

22   Plaintiff's Meeting ID was invalid.

23   Plaintiff repeatedly attempted to reach the clerk for Courtroom 302 however reached

24   the clerk's voicemail.  Believing that other attendees may have encountered a similar issue,

25   Plaintiff's counsel left a voicemail and then attempted to reach this Court through the other

26   numbers on this Court's contact page, unsuccessfully. Plaintiff's counsel instructed his

27   assistant to also try to reach the Court as well, to no avail.  Plaintiff attempted a variety of

28   methods in an attempt to troubleshoot why Plaintiff's counsel could not gain access, as

**ROB KOLSON CREATIVE PRODUCTIONS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1  rapidly as possible, including the rebooting of Plaintiff's counsel's computer, which

2  ultimately consumed valuable time.

3      At approximately 10:09 a.m., Plaintiff dialed the alternate Zoom telephone number

4  (646-828-7666) and was able to successfully access the hearing.  Plaintiff was thereafter

5  notified by this Court that the conference was continued to April 20, 2021.

6  **B.    PLAINTIFF CHOSE TO NOT PROCEED WITH LAW AND MOTION**

7          **TO DEPOSE DEFENDANT'S STATE COUNSEL AS A MATTER OF**

8          **GOOD FAITH**

9      Defendant alleges that opting to not depose Defendant's State attorney is a sign of

10 Plaintiff's dilatory conduct.  Defendant's position is patently false.  While it is true that

11 Plaintiff was contemplating deposing Defendant's State counsel, and equally true that had

12 Plaintiff ultimately committed to seeking that attorney's deposition testimony, leave of this

13 Court would be required as Defendant would rely on attorney-client privilege to prevent

14 such deposition.

15     Plaintiff's understanding of the hearing on November 17, 2020 was that, should

16 Plaintiff elect to file the necessary motion, that Plaintiff do so and set the hearing for such

17 motion on the date of the continued hearing.  Plaintiff ultimately decided to forego with the

18 motion for a number of reasons, none of which included any measure of bad faith.  To the

19 contrary, Plaintiff intended the application of such restraint to be a measure of good faith

20 and a desire to conserve resources, in addition to those matters related to the likelihood of

21 success on the merits in pragmatically overcoming the attorney-client privilege.

22 **C.    PLAINTIFF HAS ALREADY PRODUCED APPROXIMATELY 1,500**

23         **PAGES OF DOCUMENTS TO DEFENDANT IN SUPPORT OF**

24         **PLAINTIFF'S CASE.**

25     Notably, although Defendant does not bear the burden of proof at the time of trial,

26 Defendant similarly has not propounded any discovery in order to advance those

27 affirmative defenses in this matter.  While Plaintiff is prepared to propound discovery in

28 this matter, no discovery cutoff has been set for this matter and, arguably, based upon

**ROB KOLSON CREATIVE PRODUCTIONS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1    Defendant's argument advanced, Defendant was free to conduct Defendant's own

2    discovery into Plaintiff's claims.

3        On February 17, 2021, Plaintiff compiled those hardcopy documents obtained as a

4    result of the third-party subpoena directed to CitiBank, comprised of 1467 bate stamped

5    documents, and transmitted same electronically to Defendant's counsel via an online file

6    transfer.  A true and correct copy of Plaintiff's email to Defendant is attached hereto as

7    Exhibit 1 and is incorporated herein by this reference.  Plaintiff's document production was

8    in response to Defendant's request, arguably to either potential facilitate settlement or

9    apprise Defendant of the evidentiary basis for Plaintiff's claims.    Defendant's

10    representation that Plaintiff has taken no steps is misplaced and Defendant's decision to not

11    disclose this to this Court is suspect. Plaintiff is not, and has never been adverse to having

12    this matter set for trial and, at each continued hearing, reasonably believed that the parties

13    would be provided with an appropriate trial date as well as related pre-trial dates.

14    Additionally, considering the cost aspect related to litigation, Defendant fails to set

15    enumerate any dispositive motions Plaintiff was required to have brought in this action but

16    failed to.

17        No response was ever received from Defendant related to the documents served on

18    February 17, 2021 and Defendant has not, vis-à-vis, provided Plaintiff with any documents

19    that would otherwise support Defendant's affirmative defenses in this matter nor

20    propounded any discovery to Plaintiff concerning Plaintiff's claims and/or Defendant's

21    defenses, despite Defendant's representation that Defendant intended to participate in

22    discovery.

23        Moreover, as can be discerned from the Docket related to Plaintiff's attempt to

24    enforce the underlying judgment in the matter of *Rob Kolson Creative Investments, Inc. v.*

25    *Stander*, bearing case number 2:18-cv-06789-VAP-GJS.  A true and correct copy of the

26    District Court's Order Accepting Certified Facts, Findings, and Recommendations of

27    United States Magistrate Judge for a Finding of Civil Contempt in the matter bearing case

28    number 2:18-cv-06789-VAP-GJS is attached hereto as Exhibit 2 and is incorporated herein

by this reference. A true and correct copy of the Report and Recommendation of United States Magistrate Judge for a Finding of Civil Contempt Against Third Party The Stander Group and Attorney Babos is attached hereto as Exhibit 3 and is incorporated herein by this reference.

Defendant, through his control of The Stander Group Inc. as its sole principal, as well as Defendant's State counsel, each took part in conduct that the District Court ultimately ruled to be intentional efforts to forestall and unduly frustrate Plaintiff's efforts to prosecute the action. This led the Court to impose multiple awards of monetary and equitable sanctions against The Stander Group and Defendant's State counsel, which too were ignored in order to further delay, resulting in the District Court issuing orders of contempt as to The Stander Group and Defendant's State counsel, those of which have not remediated or cured. More specifically, in holding both the Stander Group and Defendant's state counsel in contempt, the District Court found that Defendant's state counsel expressly admitted to seeking to delay Plaintiff's underlying action for Defendant's ultimate benefit. (See, Exhibit 3, fn. 2, p. 8 and 9)

Plaintiff's documentary evidence, provided to Defendant, illustrative and supportive of Plaintiff's claims, were ultimately obtained notwithstanding the utter lack of participation in the underlying action's discovery process. Defendant attempted to utilize any method for the purpose of delaying the matter and hindering Plaintiff's enforcement efforts. Plaintiff has no desire to cause any further delay.

### D.    Preparation of Joint Status Reports

Plaintiff believed, related to the hearings set for January 2020 and March 16, 2021, were *continued* status conferences and as a result, joint status reports were not required by this Court. Defendant argues in support of his Motion that, as a result of this failure, Plaintiff's adversarial action should be dismissed. Defendant overlooks the fact that Defendant has similarly failed to provide this Court with either a unilateral status report or the requisite supporting declaration.

1
2
3
4
5
6
7

If any party fails to cooperate in the preparation of a joint status report and a response has been filed to the complaint, each party must file a unilateral status report not less than 7 days before the date set for each status conference, unless otherwise ordered by the court. The unilateral status report must contain a declaration setting forth the attempts made by the party to contact or obtain the cooperation of the non-complying party.

8
9

*Blade Energy Pty Ltd. v. Rodriguez (In re Rodriguez)*, BAP No. CC-13-1256-DKiTa, 14 (B.A.P. 9th Cir. Dec. 19, 2013)

10
11
12

Moreover, at no point prior to the filing of this instant Motion had Defendant made any mention of the status reports Defendant now complains of, nor had any reference been during the hearings concerning the status reports.

13

### E.    ALTERNATIVES TO DISMISSAL

14
15
16
17
18

The Ninth Circuit Courts have identified three factors that indicate whether a trial court has adequately considered alternatives: (1) Did the trial court discuss alternative sanctions and why they were inadequate? (2) Did that court implement alternative methods of sanctioning before ordering dismissal? (3) Did the court warn the plaintiff that dismissal was possible before ordering dismissal? *In re PPA*, 460 F.3d 1217, 1228–29 (9th Cir. 2006)

19
20
21
22
23
24

Defendant argues that Plaintiff's failure to appear at the March 16, 2021 hearing vitiated the need for any possible warning, however Defendant's argument requires that Plaintiff have received a warning from this Court that it did not heed.  See, *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) ("A […] warning to a party that failure to obey the court's order will result in dismissal can satisfy the 'consideration of [less drastic sanctions] requirement.")

25
26
27
28

Because Plaintiff was not provided with any warning that, if Plaintiff failed to comport with same, would result in the imposition of the most drastic of sanctions in lieu of other, less drastic sanctions, if any, would be appropriate pursuant to Ferdik, *id.* and *In re PPA*, *id.*

1

## IV.    **CONCLUSION**

Based upon the foregoing, because, *inter alia*, Plaintiff's failures to appear were unintentional and the unfortunate result excusable neglect and surprise; Plaintiff has produced to Defendant the sum total of those documents; Plaintiff has readily believed that the trial date in this adversarial action would be set, along with those pre-trial dates; and Plaintiff was not provided with a warning, Defendant's Motion should be denied.

Dated:  April 5, 2021                              NUSSBAUM APC

_____

By: Richard J. Uss
Attorneys for Plaintiff Rob Kolson
Creative Productions, Inc.

## DECLARATION OF RICHARD J. USS

I, Richard J. Uss, declare as follows:

1.      I am an attorney and an associate at Nussbaum APC, attorneys of record for Plaintiff Rob Kolson Creative Productions, Inc.  The matters contained in this declaration are of my own personal knowledge and I could and would testify as to same if called upon the testify.

2.      I make this declaration in support of Plaintiff's Opposition to Defendant's Motion to Dismiss for Failure to Prosecute (the "Motion").

3.      Plaintiff's conduct has not been frivolous, insomuch that my failure to appear at the October 16, 2020 and March 16, 2021 hearings were each due to a reasonable mistake and/or excusable neglect on my part.

4.      This matter was previously pending in Courtroom 302 before the Honorable Maureen A. Tighe and the case number then had the two letter "MT" appended thereto.

5.      Despite the transfer of this matter to Courtroom 303 where it is currently pending, unfortunately and unbeknownst to me, the matter was still erroneously identified as being in Courtroom 302 and the parties' joint status report I prepared from the information I observed in the file similarly reflects the incorrect case suffix of "MT," referencing the Honorable Maureen A. Tighe.

6.      I did not notice this error in advance of the hearing on October 27, 2020.

7.      I logged in through Zoom.gov at approximately 10 minutes prior to the start time of hearings to take place in Courtroom 302, as was provided to me in my office's calendaring system.

8.      I remained on the Zoom.gov-administered hearing for Courtroom 302 for the majority of that morning's 10:00 a.m. calendar.

9.      Thereafter, the clerk for Courtroom 302 asked me what matter I was present for.  I informed the clerk of the case number and I was told that no such case existed for that number in her courtroom and it appeared that I was in the wrong courtroom.

10. By the time I had realized the error I had made and attempted to log into Zoom for this Court's calendar, the matter had already been called and completed.

11. Following this incident, I verified that the file for this matter was updated with the correct case number along with the updated courtroom information.

12. I had no intention to not appear at the hearing in question. There was no bad faith on my part at all and I had believed that I was present in the appropriate hearing prior to learning that I was, in fact, not.

13. On March 16, 2021, I attempted to log in to the hearing through the Zoom link identified in this Court's tentative ruling (https://cacb.zoomgov.com/j/1614537835). Clicking on the link automatically opens the preinstalled Zoom application and automatically populates the meeting id and password for the attendee.

14. Despite not having to physically input a password, upon my clicking on the link, an error message appeared that the password was incorrect. I re-attempted this numerous times and then tried to manually enter the meeting id and password however a "Meeting ID Is Invalid" error appeared. I subsequently attempted to dial the telephone conference line (669-254-5252) however I received an automated message that the Meeting ID I was typing in was invalid.

15. I repeatedly attempted to reach the clerk for Courtroom 302 however was only able to reach the chamber clerk's voicemail. Believing that other attendees may have encountered a similar issue of not being able to obtain access, I left a voicemail for the chamber clerk and then attempted to reach this Court through the other numbers on this Court's contact page, albeit unsuccessfully.

16. I then instructed my assistant to also try to reach the Court as well, to no avail. I attempted a variety of methods in an attempt to troubleshoot why I could not gain access, as rapidly as possible, including the rebooting of my computer, however doing so ultimately consumed valuable time.

17. At approximately 10:09 a.m., I was successful in obtaining access through the alternate Zoom telephone number (646-828-7666) and was able to successfully access the

**ROB KOLSON CREATIVE PRODUCTIONS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

hearing.  I was thereafter notified by this Court that the conference was continued to April 20, 2021.

18.    Plaintiff was contemplating deposing Defendant's State counsel, and in the event that Defendant's State counsel was to be deposed, leave of this Court would be necessary as Defendant would rely on attorney-client privilege to prevent such deposition.

19.    My understanding was that in the event Plaintiff elected to file the necessary motion, that Plaintiff do so and set the hearing for such motion on the date of the continued status conference.

20.    Ultimately, due to the overall cost the law and motion would entail, along with the significant hurdle to overcome in order to depose Defendant's State counsel, including privilege, the decision was made to not attempt to depose Defendant's State counsel.  I notified this Court of that determination at the January 12, 2021 continued status conference.

20.    On February 17, 2021, I compiled those hardcopy documents obtained as a result of the third-party subpoena directed to CitiBank, comprised of 1467 bate stamped documents, and transmitted same electronically to Defendant's counsel via an online file transfer.  A true and correct copy of my email to Defendant transmitting the file transfer is attached hereto as Exhibit 1 and is incorporated herein by this reference.  Plaintiff's document production was in response to Defendant's request, arguably to either potential facilitate settlement or apprise Defendant of the evidentiary basis for Plaintiff's claims.

21.    Plaintiff is not, and has never been adverse to having this matter set for trial and, at each continued hearing, reasonably believed that the parties would be provided with an appropriate trial date as well as related pre-trial dates.

22.    No response was ever received from Defendant related to the documents I served on February 17, 2021 and Defendant has not, vis-à-vis, provided my office with any documents that would otherwise support Defendant's affirmative defenses in this matter nor propounded any discovery to Plaintiff concerning Plaintiff's claims and/or Defendant's

1    defenses, despite Defendant's representation that Defendant intended to participate in

2    discovery.

3        23.    Plaintiff commenced an enforcement action on a sister state judgement,

4    entitled *Rob Kolson Creative Investments, Inc. v. Stander*, bearing case number 2:18-cv-

5    06789-VAP-GJS.  A true and correct copy of the District Court's Order Accepting Certified

6    Facts, Findings, and Recommendations of United States Magistrate Judge for a Finding of

7    Civil Contempt in the matter bearing case number 2:18-cv-06789-VAP-GJS is attached

8    hereto as Exhibit 2 and is incorporated herein by this reference. A true and correct copy of

9    the Report and Recommendation of United States Magistrate Judge for a Finding of Civil

10   Contempt Against Third Party The Stander Group and Attorney Babos is attached hereto as

11   Exhibit 3 and is incorporated herein by this reference.

12       24.    Defendant, through his control of The Stander Group Inc. as its sole principal,

13   as well as Defendant's State counsel, each took part in conduct that the District Court

14   ultimately ruled to be intentional efforts to forestall and unduly frustrate Plaintiff's efforts

15   to prosecute the action.

16       25.    The District Court imposed multiple awards of monetary and equitable

17   sanctions against The Stander Group and Defendant's State counsel, which too were

18   ignored in order to further delay, resulting in the District Court issuing orders of contempt

19   as to The Stander Group and Defendant's State counsel, those of which have not

20   remediated or cured.

21       26.    In holding both the Stander Group and Defendant's state counsel in contempt,

22   the District Court found that Defendant's state counsel expressly admitted to seeking to

23   delay Plaintiff's underlying action for Defendant's ultimate benefit. (See, Exhibit 3, fn. 2,

24   p. 8 and 9)

25       27.    I believed that the hearings set for January 2020 and March 16, 2021, were

26   *continued* status conferences and as a result, joint status reports were not required by this

27   Court.

28

**ROB KOLSON CREATIVE PRODUCTIONS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

28.    Defendant has similarly failed to attempt to meet and confer with my office or myself, has not provide this Court with a unilateral status report or the requisite supporting declaration concerning any efforts to meet and confer.

29.    At no hearing had any warning been provided that if Plaintiff failed to comport with an order of this Court, the matter would or could be dismissed.

30.    Plaintiff is not, and has never been, adverse to having this matter set for trial and, at each continued hearing, I reasonably believed that the parties would be provided with an appropriate trial date as well as related pre-trial dates.

I declare under penalty of perjury for the United States of America and the State of California that the foregoing is true and correct.

Executed this, the 5th of April, 2021 at Agoura Hills, California.

_____
Richard J. Uss

**ROB KOLSON CREATIVE PRODUCTIONS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

ROB KOLSON CREATIVE PRODUCTIONS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

In re Stander; Case No. 1:20-ap-01025-GM - richard@nussbaumapc.com - Nussbaum APC Mail

# In re Stander; Case No. 1:20-ap-01025-GM



**richard@nussbaumapc.com**

to leslie

Wed, Feb 17, 6:27 PM

Good Evening Ms. Cohen,

Please find the scans of the checks received from the financial institutions, attached as a doculink, below.

Thank you.

Sincerely, Richard J. Uss, Esq., Attorney Nussbaum APC 27489 Agoura Road Suite 102 Agoura Hills, Californi
Email: Richard@nussbaumapc.com Telephone: 818-660-1919 Facsimile: 818-864-3241 CONFIDENTIALITY N
The contents of this email message and any attachments are intended solely for the addressee(s) and may co
confidential and/or privileged information and may be legally protected from disclosure. If you are not the inten
recipient of this message or their agent, or if this message has been addressed to you in error, please immedia
alert the sender by reply email and then delete this message and any attachments. If you are not the intended
recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attach
strictly prohibited.

Attachments:

- Stander Documents Combined

In re Stander; Case No. 1:20-ap-01025-GM - richard@nussbaum APC Mail

4/5/21, 4:55 PM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROB KOLSON CREATIVE PRODUCTIONS, INC., | Case No. 2:18-cv-6789-VAP (GJS) |
| Plaintiff | **ORDER ACCEPTING CERTIFIED FACTS, FINDINGS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE FOR A FINDING OF CIVIL CONTEMPT** |
| v. | |
| SCOTT STANDER, | |
| Defendant. | |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Registration of Judgment from Another District [Dkt. 1], all pleadings and other documents filed in this judgment debtor action, the Report and Recommendation of United States Magistrate Judge ("Report"), and Non-Party The Stander Group's ("TSG") Objections to the Report (including the declaration of counsel for both Defendant and The Stander Group, Peter J. Babos) [Dkt. 84]. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the Court has conducted a *de novo* review of those portions of the Report to which objections have been stated.

Nothing in the Objections affects or alters the analysis and conclusions set forth in the Report. Nearly all of TSG's Memorandum of Points and Authorities in Support of its objections is a "Recap of Prior Legal Argument" [Dkt. 84 at 5], *i.e.*, a

re-argument of the very same position and cases presented to the Magistrate Judge concerning the issue of whether Defendant Scott Stander's filing of personal bankruptcy stays discovery or other proceedings involving third party TSG.  No new facts or case law are included.  In fact, the "recap" appears to be a cut-and-paste from TSG's prior briefing.

Having completed its review, the Court accepts the certified facts, findings and recommendations set forth in the Report.  Accordingly, **IT IS ORDERED** that the Contempt Motion with respect to both TSG and Babos is GRANTED as follows:

(1)    TSG and Babos are held in contempt for failing to comply with the Court's October 23, 2019 discovery and sanctions order;

(2)    TSG must immediately produce all of the documents requested by Plaintiff and must file, within two weeks of the entry of this Order, a declaration stating that TSG has complied with the order or explaining any non-compliance;

(3)    TSG and Babos (jointly and severally) must pay to Plaintiff $4,227.50 in attorney's fees, minus any payments previously made, as required by the initial order;

(4)    TSG and Babos must pay an additional $6,012.50 ($2,112.50 for Plaintiff's opening brief and $3,900.00 for the Court-ordered supplemental briefing) payable to Plaintiff for further fees incurred litigating the contempt motion;

(5)    Attorney Babos' is hereby referred to the Central District of California's Attorney Disciplinary Committee for investigation; and

//
//
//
//

2

(6)    that the Clerk of the Court forward a copy of the Magistrate
Judge's Report and Recommendation [Dkt. 83] and this Order to
the State Bar of California, Intake, 845 South Figueroa Street,
Los Angeles, CA 90017.

DATE:  August 19, 2020

_____
VIRGINIA A. PHILLIPS
UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROB KOLSON CREATIVE PRODCTIONS, INC., <br><br>        Plaintiff/Judgment Creditor, <br><br>    v. <br><br> SCOTT STANDER, <br><br>        Defendant/Judgment Debtors. | Case No. CV 18-6789 VAP (GJSx) <br><br> **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE FOR A FINDING OF CIVIL CONTEMPT AGAINST THIRD PARTY THE STANDER GROUP AND ATTORNEY BABOS** <br><br> **[Dkt. 53]** |

This Report and Recommendation is submitted to the Honorable Virginia A. Phillips, Chief United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

# I.

# INTRODUCTION

This matter involves post-judgment discovery proceedings brought by Plaintiff and Judgment Creditor Rob Kolson Creative Productions, Inc. ("Plaintiff") against Defendant and Judgment Debtor Scott Stander, Inc. ("Defendant" or

"Stander").  Pending before the Court is Plaintiff's motion for a finding of civil contempt against The Stander Group ("TSG"), a separate corporate entity that is wholly owned by Defendant.[1]  [Dkt. 53 ("Contempt Motion").]  On October 23, 2019, the Court issued a discovery order requiring TSG to turn over certain discovery, file a declaration regarding discovery, and pay Plaintiff $4,227.50 in attorney's fees pursuant to Rule 37(a)(5)(A) and as a sanction for discovery abuses.  [Dkt. 46, ("the October 23 Order").]  Both TSG and counsel were held jointly and severally responsible for the payment of fees.  Plaintiff's Contempt Motion stems from TSG and counsel's failure to substantially comply with any portion of the Court's order.  In sum, TSG repeatedly failed to provide the required discovery, never supplied the declaration the Court ordered, and, through counsel repeatedly made promises regarding that discovery to both opposing counsel and the Court that he later admitted he never intended to keep.

While Plaintiff's Contempt Motion was pending, Plaintiff brought to the Court's attention that neither TSG nor attorney Babos had paid any portion of the sanctions.  [Dkt. 57 ("Supplement").]  TSG objected to the Court considering this supplemental filing as part of the Contempt Motion [Dkt. 65], so the Court granted TSG and Babos additional time to file a supplemental opposition to the motion.  [Dkt. 67.]  All briefing was concluded prior to the hearing, which took place on January 15, 2020.

After the hearing, the parties each submitted proposed certified facts.  Because the facts were in conflict on a basic point – whether Mr. Babos or his client had paid any portion of the sanctions awarded – the Court ordered the parties to file a joint status report.  In March, the parties jointly informed the Court that Mr. Babos had made an initial payment, based on a previous agreement with which he had not, before the filing of the Contempt Motion, complied.  [Dkt. 78.]  The Court

---

[1]  Both Defendant Scott Stander and TSG are represented by Mr. Babos.

2

issued an order for a status report again in early May and was informed by Plaintiff that no further payments were made. [Dkt. 81.] It appears that the Court must now make its final recommendation to the District Judge regarding Plaintiff's Contempt Motion.

A magistrate judge's civil contempt power is governed by 28 U.S.C. § 636(e), which provides in relevant part that where, as here, the act complained of "constitutes a civil contempt,"

> the magistrate judge shall forthwith certify the facts to a district judge
> and may serve or cause to be served, upon any person whose behavior
> is brought into question under this paragraph, an order requiring such
> person to appear before a district judge upon a day certain to show
> cause why that person should not be adjudged in contempt by reason
> of the facts so certified.

28 U.S.C. § 636(e)(6)(B)(iii).

For the reasons stated below, it is recommended that the District Judge find, based on the facts certified in Part II below, that TSG and Attorney Babos are in contempt of the Court's October 23 Order requiring: TSG to turn over certain discovery; to provide opposing counsel with a declaration as specified on the record and in the Order; and pay Plaintiff $4227.50 in attorney's fees as a sanction for discovery abuses. [Dkt. 46.]

## II.
### CERTIFIED FACTS

This current action, filed on June 10, 2018, is an application for enforcement

3

of a judgment entered in favor of Plaintiff and against Defendant Scott Stander ("Defendant") in the amount of $354,069.45. Plaintiff's judgment was entered against Defendant in the United States District Court for the Northern District of Illinois, Eastern Division on September 10, 2014 (the "Judgment.") Plaintiff's Judgment permits Plaintiff to recover those additional reasonable fees and costs incurred after the date of the Judgment related to the collection of the Judgment. The Judgment is also collecting interest under 28 U.S.C. § 1961.

A judgment debtor exam was conducted on January 16, 2019 during which Defendant Stander testified that he was the sole owner of The Stander Group, Inc. ("TSG"), a California corporation incorporated on June 19, 2009. TSG is not a party to this instant action, a fact that counsel for both Stander and TSG, Attorney Babos, has repeatedly stated in both filings and on the record during court proceedings.

Defendant further represented that Jackie Stander was the custodian of TSG's business records. This Court granted Plaintiff permission to serve a subpoena on Jackie Stander. Accordingly, on April 6, 2019 Plaintiff issued a Subpoena to Testify at a Deposition to TSG's Person Most Knowledgeable ("the Subpoena") which, in addition to requiring testimony at the third-party exam scheduled for June 5, 2019, required the production of certain documents ("the Documents"). Counsel for Defendant Stander and TSG, Attorney Peter J. Babos, agreed to accept service on behalf of TSG in lieu of personal service. Shortly before the scheduled exam, Attorney Babos notified counsel for Plaintiff that Jackie Stander would be unavailable on June 5, 2019.

Plaintiff agreed to continue the exam on the express condition that TSG enter into a binding Stipulation requiring TSG to produce the requested documents to Plaintiff's counsel on or before June 15, 2019. This Stipulation was signed by Plaintiff's counsel and Attorney Babos on June 3, 2019, and filed with the Court on June 4, 2019. [Dkt. 24.] This Court subsequently ordered that the examination of

4

1    TSG's Person Most Knowledgeable be continued to July 17, 2019.  [Dkt. 25.]

2       TSG failed to produce the documents by the June 15, 2019 deadline.

3  Plaintiff, consequently, again requested that the Court vacate the third-party debtor

4  exam of TSG's Person Most Knowledgeable.

5       On August 6, 2019, prior to filing a motion to compel TSG's compliance

6  with the Subpoena, Plaintiff's counsel sent a meet and confer letter to Attorney

7  Babos.  On August 9, 2019 Attorney Babos responded by phone and informed

8  Plaintiff's counsel that he would review the file and identify which documents TSG

9  would be producing and advise Plaintiff's counsel of the same by August 12, 2019.

10  Attorney Babos failed to communicate with counsel as he promised on August 12,

11  2019.

12       On August 15, 2019, counsel for Plaintiff followed up with Attorney Babos

13  by email to determine the status of the document production.  Attorney Babos did

14  not respond until August 23, 2019, when by email he informed counsel for Plaintiff

15  that due to his press of business (acting as a trustee and power of attorney for other

16  clients), he had been unable to identify for Plaintiff the documents TSG would be

17  producing.  Attorney Babos stated that he would call counsel on August 26, 2019 to

18  propose a day when counsel could personally meet and confer.  Attorney Babos

19  failed to call on August 26, 2019.

20       On Thursday, August 29, 2019, during an email exchange between counsel,

21  Attorney Babos inquired as to Plaintiff's receipt of documents from Citibank as

22  well as the need to further meet and confer, intimating that because Citibank had

23  produced certain documents in response to a separate subpoena from Plaintiff's

24  counsel, nothing further was required of TSG.  Despite TSG having yet to turn over

25  a single requested document, Attorney Babos stated he would do his best to comply

26  and produce documents not contained in Citibank's separate document production

27  if Plaintiff's counsel would tell him what they were still missing from the Subpoena

28  to TSG.  Plaintiff's counsel notified Mr. Babos by email that the deadline to meet

and confer had been expired for nearly two weeks and that, pursuant to the rules of this Court, Plaintiff would be filing an *ex parte* application for leave to file a Motion to Compel and seek sanctions against both TSG and Attorney Babos. Plaintiff filed the same on September 3, 2019.

On October 23, 2019, the Court held a hearing on Plaintiff's Motion to Compel TSG's compliance with Plaintiff's Subpoena.  [Dkt. 46.]  Attorney Richard J. Uss appeared on behalf of Plaintiff and Attorney Babos appeared on behalf of himself and TSG.  [*Id.*]  Following oral argument, the Court granted Plaintiff's Motion to Compel and further ordered Attorney Babos to file and serve a declaration no later than November 25, 2019 that set forth: (1) the documents that TSG would be producing; (2) the documents that TSG was unable to locate; and (3) the documents that were in the possession of third parties.

The Court also advised that, due to TSG's ongoing non-compliance with the April 6, 2019 Subpoena (including failure to properly object to the subpoena), any claim of privilege or other defense TSG may have had to producing the Documents had been waived.  The Court sanctioned TSG and Attorney Babos, jointly and severally, in the amount of $4,227.50, payable to Plaintiff for attorneys' fees incurred in making the motion to compel.  [Dkt. 46.]  The sanctions were to be paid by December 2, 2019.  [*Id.*]  The third-party judgment debtor exam of TSG's Person Most Knowledgeable was reset for December 18, 2019.  [Dkt. 51.]

Plaintiff has submitted unrebutted evidence that, while exiting the building after the October 23, 2020 hearing, Attorney Babos told one of Plaintiff's counsel that the only reason that his client Defendant Scott Stander had not already declared bankruptcy was so that he could drag out the judgment debtor proceedings and thereby make the litigation as expensive as possible for Plaintiff.  [Dkt. 53-1 (Uss Decl., ¶¶ 3-4.]

On November 13, 2019, in order to assuage TSG's alleged concerns regarding the dissemination of certain information that might be obtained by

Plaintiff through discovery, this Court entered a protective order that closely resembled this Court's model protective order.  (Plaintiff had offered to submit a proposed protective order jointly with TSG, pursuant to the Court's procedures, long before this date.  Attorney Babos did not cooperate.)  In hindsight, it is clear that TSG was just using the failure to have a protective order in place – a protective order it refused to cooperate in submitting to the Court – as another excuse to avoid production.

On November 25, 2019, the date that TSG's court-ordered declaration was due to be filed, Attorney Babos, via email, notified Plaintiff's counsel that he was having difficulty procuring and assembling the Documents.  Attorney Babos requested an additional week in order to "respond with all documents" and stated that he would work through the Thanksgiving holiday weekend in order to finally deliver the same to Plaintiff.  Plaintiff's counsel notified Mr. Babos – not for the first time – that Plaintiff would not agree to any additional extensions.

TSG and Attorney Babos' failed to meet the Court ordered deadline for the production of the Documents and filing of an explanatory declaration.  The next day – having by then sought the documents for many months – Plaintiff filed its Notice of Motion and Motion for Civil Contempt Sanctions, requesting that this Court impose civil contempt sanctions against Attorney Babos and TSG, including attorney's fees in the amount of $2,112.50.  The court-ordered declaration was never provided to counsel or the Court.

The second court-ordered deadline – for payment of the $4,227.50 attorney's fees Plaintiff incurred for the motion to compel – passed on December 2, 2019 without either TSG or Attorney Babos' making any payment to Plaintiff, and without any communication with the Court requesting an extension or offering an explanation.  Plaintiff thus, on December 10, 2019, filed a Supplement to Plaintiff's Motion for Civil Contempt Sanctions advising the Court of the non-payment and requesting an additional $650.00 in reasonable attorney's fees incurred related

thereto.

On December 13, 2019, Defendant Scott Stander, as an individual, filed a petition for Chapter 7 bankruptcy, bearing Case Number 1:19-bk-13099-MT under the name Marshall Scott Stander. No bankruptcy petition of any kind was filed on behalf of TSG. [Dkt. 60 (Defendant's Notice of Filing Bankruptcy).]

Upon learning of Defendant Scott Stander's bankruptcy filing, the Court ordered supplemental briefing on what effect, if any, Defendant's bankruptcy filing had on Plaintiff's contempt motion, which seeks sanctions against third party TSG and Attorney Babos, not Defendant Stander. Plaintiff filed its supplemental brief on December 20, 2019. [Dkt. 63.] On December 23, 2019 and January 8, 2020, TSG and Attorney Babos filed their Oppositions. [Dkts. 65, 68.] Plaintiff filed its Reply on December 24, 2019, and a further response to Defendant's January 8, 2020 filing on January 10, 2020. [Dkts. 66, 69.]

The hearing on Plaintiff's Motion for Civil Contempt Sanctions was held on January 15, 2020. During that hearing, Attorney Babos admitted in open court that Defendant/Debtor Scott Stander had for some time been planning to file for Chapter 7 bankruptcy and, for that reason, TSG had never had any intention to comply with this Court's Order requiring TSG to produce the Documents or otherwise explain by Declaration their lack of production. Nor did TSG or Attorney Babos ever intend to pay the $4,227.50 in monetary sanctions to Plaintiff. In the Court's view, these admissions demonstrate that Attorney Babos' email of November 25, 2019, wherein he requested an additional week to "respond with all documents" while working through the Thanksgiving weekend [Dkt. 35-1 (Simon Decl., Ex. 2)] was nothing but a false representation designed to "buy time" sufficient to present Scott Stander's Chapter 7 petition to the Bankruptcy Court. Babos incorrectly expected that by doing so, he and TSG would be sheltered by the automatic bankruptcy stay.[2]

_____

[2] Attorney Babos' courtroom admission was repeated in his Proposed Certified Facts, submitted on February 18, 2020. [Dkt. 74 (one of the reasons he requested

1    Besides making that admission, Attorney Babos also argued that, even

2 though TSG itself had not filed for bankruptcy, TSG was the "property" of the

3 estate of Scott Stander and therefore similarly included in the automatic stay that

4 precluded any action being taken against TSG to enforce the April 6, 2019

5 Subpoena and this Court's Order of October 23, 2019.

6    Finally, Mr. Babos represented to this Court that he himself could not afford

7 to pay the monetary sanctions to Plaintiff as ordered.  Mr. Babos has not, to date,

8 provided any evidence to support his declaration that he could not pay the

9 sanctions; nor has he requested a modification of the Court's order, such as an

10 approval of a payment plan.  Mr. Babos thus essentially declared himself sanction-

11 proof, which the Court views as further evidence that he considers himself above

12 the law and beyond the power of this or any Court.

13

14                                **III.**

15         **THE BANKRUPTCY STAY DOES NOT APPLY TO TSG OR BABOS**

16    As an initial matter, the Court must deal with TSG and Attorney Babos'

17 argument that the filing by Defendant Stander of personal bankruptcy automatically

18 stays these proceedings such that the Court may not rule on Plaintiff's Contempt

19 Motion (filed before the bankruptcy) or in any fashion enforce its prior discovery

20 order, which included attorneys' fees sanctions, from November of last year.  The

21 Court finds Stander and TSG's position unpersuasive.

22    In general, the bankruptcy code, 11 U.S.C. § 362(a), provides for an

23

24 extensions of time was that "a bankruptcy filing seemed imminent at around that
time and Babos assumed a 362a automatic stay would be in effect preventing any
25 further litigation" which would relieve him from producing the previously ordered
26 discovery responses.]  That Attorney Babos believes that such an admission –
apparently made to support an argument that his lies to the Court and counsel were
27 justified because they were made for tactical reasons – helps his cause is, quite
28 simply, flabbergasting.

automatic stay of proceedings against a debtor or against property of the debtor's
estate. TSG thus argues that it is a corporation that is wholly owned by Scott
Stander and, thus, any proceeding to seek discovery against TSG is also stayed.
This shield – TSG's alleged ability to ignore court orders – holds, according to
TSG, even though the discovery was ordered long before Stander's bankruptcy was
filed (and despite the fact that TSG and its counsel were sanctioned for its behavior
in connection with that discovery).

### TSG And Babos Admit That Sanctions Orders Are Not Subject To The Automatic Stay

Attorney Babos originally contended that the Court could not proceed with
contempt proceedings related to attorneys' fees against TSG or him, but has now
admitted that "an order of attorney fee sanctions is <u>not</u> subject to the 362(a) stay."
[TSG and Stander's [Proposed] Certified Facts [Dkt. 74] at 8.] Thus, the Court's
ability to issue a contempt order as to the previously ordered yet-unpaid sanctions is
no longer at issue.

### TSG Is Not The Debtor

The first basis upon which the Court rejects TSG's contention that it is
covered by the automatic stay is that *TSG* has not declared bankruptcy. Defendant
Stander has consistently insisted that TSG is a separate entity, requiring Plaintiff to
respect the corporate form and seek permission to subpoena TSG for records and
testimony. Stander has, in the Court's view, used TSG's status as a third party to
protect assets from Plaintiff's collection efforts. As noted above, however, TSG
and Stander now argue that Stander "wholly owns" the corporation, which is thus
an "asset" belonging to Stander that is subject to and protected by the automatic
bankruptcy stay. He and TSG want the Court to respect TSG's corporate form
when it is advantageous to Stander, but essentially ignore it when TSG seeks
protection against the Court's prior order or any additional third-party discovery.
TSG cannot have it both ways.

In any event, even if the corporation is "wholly owned" by Stander, the *assets* of the corporation are not part of his estate unless and until they are somehow brought into the estate by bankruptcy trustee.  No such action has been taken here. Despite being given multiple opportunities to cite any authority to support the proposition that TSG is immune to discovery orders or a contempt finding under these circumstances, TSG and Babos have come up empty.

## The Discovery Order Is An Ancillary Proceeding Not Subject To The Automatic Stay

Plaintiff contends, and the Court agrees, that the discovery proceedings that ultimately led this Court to order the production of the Documents and the payment of sanctions – as well as the contempt hearing stemming from TSG and Attorney Babos' refusal to abide by that Order – were the type of ancillary proceedings that would not be subject to the bankruptcy code's automatic stay even if it was TSG's bankruptcy, as opposed to Scott Stander's individual bankruptcy.

Ancillary proceedings that are inherent to a court's regulatory power are an enumerated exception to the automatic stay as provided for by 11 U.S.C. §362(b)(4).  In *In re Dingley*, the Ninth Circuit explained:

> Once a debtor files for bankruptcy, the Bankruptcy Code imposes an automatic stay prohibiting creditors from attempting to collect pre-petition debts against the debtor. This rule, however, is subject to certain statutorily-enumerated exceptions.  In this appeal we must determine whether civil contempt proceedings fall under one of these exceptions. We hold that under *In re Berg*, 230 F.3d 1165 (9th Cir. 2000), civil contempt proceedings are exempted from the automatic stay under the Bankruptcy Code's government regulatory exemption, 11 U.S.C. § 362(b)(4), when, as here, the contempt proceedings are intended to effectuate the court's public policy interest in deterring litigation misconduct.

852 F.3d 1143, 1144 (9th Cir. 2017).

Moreover, as the court in *David v. Hooker* held, compelling discovery from a debtor was not necessarily a violation of the automatic bankruptcy stay but was itself an ancillary proceeding of the litigation.  560 F.2d 412 (9th Cir. 1977).  The

*David* court concluded that:

> [D]espite filing of the bankruptcy petition and the broad language [of the automatic stay provision], it was entirely consistent for the trial court to grant a stay of the principal proceedings but to continue to order the corporate defendant and its managing agent to comply with a prior discovery order issued by the United States Magistrate Judge and later adopted by the trial court.  Pursuant to that limited continuation of a collateral aspect of litigation, it was also within the trial judge's power to consider whether the defendant and its agent were in contempt of Court pursuant to Rule 37 of the FRCP for failure to follow prior orders.

*Id.* at 418.  If continuation of pre-bankruptcy discovery proceedings against a debtor is permissible, the same finding must result if the individual from whom discovery is sought is a third party that has not declared bankruptcy.

For these reasons, the Court finds that the automatic bankruptcy stay attendant to Scott Stander's personal bankruptcy provides no protection for TSG on any front (discovery or sanctions).  It certainly provides none for attorney Babos.  Moreover, with respect to the sanctions portion of the Court's prior order, Babos admits that both he and TSG may be held in contempt.

## III.
## STANDARD FOR CIVIL CONTEMPT

Civil contempt consists of a party's intentional disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir. 1993).  "The standard for finding a party in civil contempt is well settled:  The moving party has the burden of showing by clear and convincing evidence that the [non-moving party] violated a specific and definite order of the court."  *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999).

If the moving party meets this burden, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply."  *Stone v. City &*

*Cnty. of S.F.*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) (citations omitted). As the
Supreme Court has explained**,**

> In a civil contempt proceeding . . . a defendant may assert a <u>present</u>
> inability to comply with the order in question. While the court is
> bound by the enforcement order, it will not be blind to evidence that
> compliance is now factually impossible. Where compliance is
> impossible, neither the moving party nor the court has any reason to
> proceed with the civil contempt action. It is settled, however, that in
> raising this defense, the defendant has a burden of production.

*United States v. Rylander*, 460 U.S. 752, 757 (1983) (internal citations omitted;
emphasis in original); *see also Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d
623, 629-30 (9th Cir. 2016) (test for civil contempt is whether the contemnor has
the present ability to comply, "not whether it could have complied in the past")
(citing *Rylander,* 460 U.S. at 757); *Donovan v. Mazzola*, 761 F.2d 1411, 1418 (9th
Cir. 1985) ("Ability to comply is a crucial inquiry for the court's decision
concerning coercive civil contempt orders . . . ."); *United States v. Drollinger*, 80
F.3d 389, 393 (9th Cir. 1996) ("Present inability to comply is a complete defense to
civil contempt.").

   "The district court 'has wide latitude in determining whether there has been
contemptuous defiance of its order.'" *Hook v. Arizona Dep't of Corr.*, 107 F.3d
1397, 1403 (9th Cir. 1997), *as amended on reh'g and reh'g en banc* (Apr. 22, 1997)
(quoting *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984)). However, "a
person should not be held in contempt if his action appears to be based on a good
faith and reasonable interpretation of the court's order." *In re Dual–Deck Video
Cassette Recorder Antitrust Litig.*, 10 F.3d at 695 (internal formatting and quotation
marks omitted). "'Substantial compliance' with the court order is a defense to civil
contempt, and is not vitiated by 'a few technical violations' where every reasonable
effort has been made to comply." *Id.* Conversely, "civil contempt may be

established even though the failure to comply with the court order was
unintentional." *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985).  A showing
of willfulness is not a necessary element for civil contempt because while the
purpose of criminal contempt is punishment, "the purpose of civil contempt is
remedial." *Id.*

"Sanctions for civil contempt may be imposed to coerce obedience to a court
order, or to compensate the party pursuing the contempt action for injuries resulting
from the contemptuous behavior, or both." *Gen. Signal Corp. v. Donallco, Inc.*,
787 F.2d 1376, 1380 (9th Cir. 1986).  Accordingly, there are two types of civil
contempt sanctions: coercive and compensatory.  *Falstaff Brewing Corp. v. Miller
Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983).  Coercive sanctions are "intended
to coerce the contemnor to comply with the court's orders in the future." *Richmark
Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992).
Compensatory sanctions are intended "to compensate the contemnor's adversary for
the injuries which result from the noncompliance." *Falstaff*, 702 F.2d at 778.

The Ninth Circuit has admonished district courts of "the need for a flexible
approach to awarding fees and expenses in civil contempt." *Perry*, 759 F.2d at 706.
In addition to ordering monetary sanctions, the court's civil contempt authority
includes the power to issue a bench warrant for the contemnor's arrest.  *See id.*
(lower court did not abuse discretion in awarding fees and expenses as civil
contempt sanction where contemnor did not comply with court order even after
being found in contempt and bench warrant issued for her arrest); *see also In re Si
Yeon Park, Ltd.*, 198 B.R. 956, 969 (Bankr. C.D. Cal. 1996) ("In a sufficiently
egregious civil contempt proceeding involving a private party, the United States
Marshals can arrest the contemnor pursuant to a bench warrant, and incarcerate that
individual until compliance is achieved.").

# IV.

## DISCUSSION

Based on the certified facts above, there is no question that both TSG and Babos violated the Court's October 23, 2019 discovery and sanctions order. Moreover, despite multiple opportunities to explain or correct their behavior, they have failed in every instance. In fact, the only "explanation" offered by Mr. Babos conclusively demonstrates that his (and TSG's) violation of the Court's order was willful.

In addition, neither TSG nor Babos have offered sufficient reason why they cannot comply with either the discovery order (TSG) or the portion of the order requiring payment of sanctions (both TSG and Babos). While Babos has stated – without any supporting detail or documentation – that he cannot afford to pay the sanctions, he previously agreed to a payment plan with Plaintiff. He made an initial payment when prompted by the Court, but has since gone "radio silent." He thus has not carried his burden – or even attempted to answer on behalf of TSG – to demonstrate an inability to comply with any portion of the Court's order. *See Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993) ("[Defendant], as the sanctioned party, had the burden to *produce probative evidence* of his inability to pay the sanctions.") (emphasis added); *see also* C.D. Cal. L.R. 7-6 ("Factual contentions involved in any motion and opposition to motions shall be presented, heard, and determined upon declarations and other written evidence (including documents, photographs, deposition excerpts, etc.) alone . . . .").

It therefore appears, based on the record before the Court, that both TSG and Babos are in contempt of the Court's sanctions order, and TSG is, further, in contempt of the discovery portion of the order. Even though the October 23, 2019 order was specific and definite, TSG and Babos did not comply with the Order and have not shown by any evidence whatsoever that they lack the present ability to do so.

1    Consistent with the requirements of 28 U.S.C. § 636(e), TSG and Babos will

2    have an opportunity to explain to the District Judge why they should not be found

3    in contempt by filing Objections to this Report and Recommendation.

4

5                                      **V.**

6                            **RECOMMENDATIONS**

7

8    Based on the certified findings of fact in Part II of this Report, IT IS

9    RECOMMENDED that the District Judge:

10

11   (1)    grant the Contempt Motion with respect to both TSG and Babos

12          and find them in contempt for failing to comply with the

13          Court's October 23, 2019 discovery and sanctions order;

14   (2)    again order TSG to immediately produce all of the documents

15          requested by Plaintiff and to file, within two weeks of the entry

16          of any order of the District Judge accepting this

17          recommendation, a declaration stating that TSG has complied

18          with the order or explaining any non-compliance;

19   (3)    order TSG and Babos (jointly and severally) to pay to Plaintiff

20          $4,227.50 in attorney's fees, minus any payments previously

21          made, as required by the initial order;

22   (4)    assess an additional fine against both TSG and Babos of

23          $6,012.50 ($2,112.50 for Plaintiff's opening brief and

24          $3,900.00 for the Court-ordered supplemental briefing) payable

25          to Plaintiff for further fees incurred litigating the contempt

26          motion;

27   (5)    that attorney Babos' be referred to the Central District of

28          California's Attorney Disciplinary Committee for investigation;

Case 2:18-cv-00789-VAP-GJS    Document 33    Filed 05/20/20    Page 17 of 17    Page ID #:570

and

(6)     that the clerk forward a copy this Report and Recommendation

and any order accepting this R&R issued by the District Judge

to the State Bar of California, Intake, 845 South Figueroa

Street, Los Angeles, CA 90017.

DATED:  May 19, 2020

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

27489 Agoura Rd., Ste. 102, Agoura Hills, CA 91301

A true and correct copy of the foregoing document entitled (*specify*): _____
ROB KOLSON CREATIVE PRODUCTIONS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
_____
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
04/06/2021_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

David Keith Gottlieb (TR) - dkgtrustee@dkgallc.com, Leslie A Cohen - leslie@lesliecohenlaw.com, United States
Trustee (SV) - ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  04/06/2021_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Geraldine Mund -United States Bankruptcy Court 21041 Burbank Boulevard, Suite 312 / Courtroom 303
Woodland Hills, CA 91367

Marshall Scott Stander - 13834 Magnolia Blvd. Sherman Oaks, CA 91423

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 04/06/2021 | Shauna Wilcox | |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**